Donna L. Huffman (#23324)
The Law Office of Donna L. Huffman
P.O. Box 1, 303 Jefferson Street
Oskaloosa, Kansas 66066
Ph:   (785) 863-2250
Fax: (785) 863-3377
Attorney for the Plaintiffs



FILED BY CLERK
KS. DISTRICT COURT
THIRD JUDICIAL DIST.
TOPEKA, KS

2010 OCT 22  P 3: 07

## IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS

Roy and Sheila Bowers,
   Plaintiffs,      )
             )  Case No. _JDC 1517_
v.            )
             )  Division ___9___
Mortgage Electronic Registration Systems and )
Lorna Slaughter         )
     Defendants.      )

---

## PETITION
## Pursuant to K.S.A. Chapter 60

   COME NOW, the Plaintiffs, Roy and Sheila Bowers, by and through The Law Office of Donna L. Huffman, for their claims against the Defendants they state and allege as follows:

### VENUE

1.  Roy B. Bowers and Sheila A Bowers are citizens of the State of Kansas.

2.  The subject matter of the suit is real property commonly known as 6235 Kendall Wood Drive, Topeka Kansas.[1]

3.  Mortgage Electronic Registration Systems, Inc. (MERS) is a corporation existing under the laws of Delaware and operating in the State of Kansas.

4.  Lorna Slaughter is Vice President of MERS and believed to be in Maryland due to the location of the notary seal on the false document recorded in Shawnee County Kansas.

---

[1] Lot 3, Block D, INDIAN VALLEY SUBDIVISION II, Shawnee County, Kansas.

## ALLEGATIONS COMMON TO ALL COUNTS

5.      The Mortgage in favor of MERS, executed by Roy and Sheila Bowers on October 9, 2008, was for loan number 0000449035.   (Exhibit 1)

6.      Loan number 0000449035 no longer in existence.

7.      The Mortgage in favor of MERS, executed by Roy and Sheila Bowers on October 9, 2008, was for FHA Case No.  181-2289179-703-203(B).[2]  (Exhibit 1)

8.      Roy and Sheila Bowers no longer have an FHA loan.

9.      The Mortgage in favor of MERS, executed by Roy and Sheila Bowers on October 9, 2008, was released.

10.      MERS, in the normal course of business, tracks Mortgage ownership.

11.      MERS, in the normal course of business releases security instruments.

12.      The release was recorded by a CERTIFICATE OF SATISFACTION executed on July 3, 2009, recorded on July 15, 2009 at 09:37:55.343 A.M. at Book 4721 Page 100.(Exhibit 2)

13.      On November 13, 2009, MERS, by signature of its duly authorized officer, Lorna L. Slaughter as "Vice President", executed a document entitled CAVEAT AS TO THE EXISTENCE OF A MORTGAGE LIEN DUE TO ERRONEOUS RELEASE OF MORTGAGE.

14.      MERS caused the document to be filed by presentment to Kansas Secured Title.

15.      The document was recorded in Shawnee County, Kansas by the Register of Deeds on November 20, 2009 at 11:22:53.683 A.M. at Book 4758 Page 118.  (Exhibit 3)

---

[2] Variations exist for FHA case numbers which should all be recognized throughout the litigation as one and the same.  The base FHA case number is 181-2289179, this is also effective with the specific ADP code (703) resulting in a variation of 181-2289179-703, the same number is also effective with the type of loan program code (203(B)) resulting in a variation of 181-2289179-703-23(B).

## COUNT I
## SLANDER AND DISPARAGEMENT OF TITLE

16.     Plaintiffs allege and re-allege the foregoing, incorporating the facts and allegations by reference into the following causes of action and claims for relief as though fully set forth herein.

17.     Pursuant K.S.A.§60-514(a), actions for slander must be brought within one year.

18.     The Document titled as CAVEAT AS TO EXISTENCE OF A MORTGAGE LIEN DUE TO ERRONEOUS RELEASE OF MORTGAGE is dated November 13, 2009 therefore, this action is timely.

19.     The comments and assertions meant to eviscerate the CERTIFICATE OF SATISFACTION were intentional as demonstrated by the affirmative acts of drafting, executing, delivering, and requesting filing the Document.

20.     The comments were false as the CERTIFICATE OF SATISFACTION pertains to specifically to loan number 0000449035 and FHA case number 181-2289179-703-203(B) which were satisfied or closed upon that date or shortly thereafter.

21.     The comments were made maliciously through a demonstration malice through a reckless disregard for the truth when the fact that the loan number and case number ceased to be active was either not verified or ignored when making the false statements that:

    A.  The Mortgage dated October 9, 2008 continues to exist.

    B.  That the release of the Mortgage was in error.

    C.  Further a false certification that the Mortgage was released in error by the instrument identified as "Certificate of Satisfaction".

    D.  That this "Caveat" is effective as a "reinstatement" or "reaffirmation".

    E.  That the underlying debt obligation has not been fully paid.

3

F.  That the underlying debt obligation has not been fully satisfied.

G.  That the underlying debt obligation has not been fully discharged.

H.  That the underlying debt obligation continues to exist.

I.  That the "Certificate of Satisfaction" should not be construed as any impairment to the Mortgage.

These false statements or combinations thereof were designed to effect a lien on title or in the alternative and at minimum cloud title in favor of MERS.

22.     Defendants continue to make defamatory remarks and re-publish the by the presence of the false statements in the recorded Document each time the title is searched or the record viewed.

23.     Defendant MERS is liable for the actions of their authorized officer, Lorna L. Slaughter.

24.     Roy and Sheila Bowers suffered damage as a direct and proximate cause of MERS and Lorna L. Slaughter's reckless disregard for the truth when the authorized corporate officer signed the intentionally drafted Document, then intentionally published the Document by delivering the original to a third party title agency, Kansas Secured who relied on the same and under their instruction caused the original Document to be delivered to and recorded by the Shawnee County Kansas Register of Deeds Marilyn L. Nichols who then published in the official county records the false statements contained in the written Document of November 13, 2009 that the October 9, 2008 Mortgage had been released in error and further that the Certificate of Satisfaction was made in error expecting others to rely on the statement that the Certificate of Satisfaction should not be construed as any impairment to the MERS Mortgage; the statements were intentionally designed to does and continues to disparages title when

4

delivering the document that caused and was designed to cause Kansas Secured Title, an public

officer in her official capacity, and other third parties to take action upon the Document and

record the same; further by intentionally causing notice to the public who relies on the Document

including Shawnee County title companies who republish and distribute the information in their

regular course of business by copying and recording the information in their plants and records,

ready to report the same to others believing the false statements contained in the Document to be

accurate; resulting in the direct and proximate cause of damage to title reputation and further

injury to the Plaintiffs in attorney fees required to timely address the Document under a one year

statute of limitations.

## COUNT II
## CONVERSION

25.　　Plaintiffs alleges and re-allege the foregoing, incorporating the facts and

allegations by reference into the following causes of action and claims for relief as though fully

set forth herein.

26.　　MERS and Lorna assumed or exercised control over the chain of title when

intentionally creating, signing, delivering, and then publishing when causing the Document

containing false statements to be filed by a third party in interference of Plaintiff's beneficial

contract rights that resulted in a correct and proper Certificate of Satisfaction to be recorded then

attempting to discredit the same when asserting the proper accurate and proper Satisfaction is of

no effect resulting in an intentional impairment of the property rights and title of Roy and Sheila.

27.　　MERS and Lorna's intentional assertion of willful dominion and control over the

Plaintiff's property rights is and was intended to be continuing in nature as they know it will be a

permanent part of the record until released.

5

28.     Roy and Sheila have suffered damages as a direct and proximate result of the Defendant's misconduct and acts of conversion resulting in loss of benefit and use of an accurate chain of title reflecting the property be clear of the Mortgage executed October 9, 2008 and the subsequent properly recorded release on July 15, 2009 which results in damage the property rights of the Plaintiffs resulting further in expenditures of time and money relating expenses to correct by a demand for removal of the restraint created by the Document from the public record containing Defendants false statements and wrongful acts.

## COUNT III
## NEGLIGENCE

29.     Plaintiffs alleges and re-allege the foregoing, incorporating the facts and allegations by reference into the following causes of action and claims for relief as though fully set forth herein.

30.     MERS and Lorna had a duty, not just to each other, generally as a business undertaking the obligation of tracking the transfer of ownership interest in specific mortgage documents and as such, are regularly engaged in reporting to the Shawnee County public records of their Mortgage interest.  This voluntary undertaking for profit of these acts carries with it a duty that the reporting is limited to accurate truthful statements.  Further, MERS and Lorna acknowledge that duty and the importance of truth when making and certifying the truth of the statements within the Document.   Making false statements included above and specifically that the Mortgage was released in error breached the duty of candor.

31.     MERS and Lorna created a duty to accurately and honestly track the transfer of ownership interests when specifically accepting the undertaking in the October 9, 2008 Mortgage given by Roy and Sheila Bowers to MERS.

32.     There was a duty to release the Mortgage when the specific Note and FHA case number were satisfied or closed.   Therefore there is a subsequent duty to refrain from interference with that release.  When MERS and Lorna created, signed, and caused to be filed the Document falsely stating there was an erroneous release of mortgage, they breached that duty.

33.     MERS and Lorna either negligently failed to have procedures in place or negligently ignored them when they breached the duty by creating, signing, delivering, publishing, and causing the filing of the Document making a false certifications.

34.     MERS and Lorna failed to exercise reasonable care when failing to observe the standards of title and created, signed, delivered, published and caused to be filed the Document asserting the October 9, 2008 mortgage released four months earlier was still in existence.

35.     MERS and Lorna failed to observe or protect the Plaintiff's interests, the property rights.

36.     Petitioners have suffered damages as a direct and proximate result of the Defendant's negligent and or intentional acts resulting in loss of or damage to title reputation and loss of use of an accurate chain of title reflecting the property be clear of the Mortgage executed October 9, 2008 and the subsequent properly recorded release on July 15, 2009 which results in damage the property rights of the Plaintiffs resulting further in expenditures of time and money relating expenses to correct by a demand for removal of the restraint created by the Document from the public record containing Defendants false statements and wrongful acts.

## COUNT IV
### FRAUD AND OR MISREPRESENTATIONS

37.     Plaintiffs alleges and re-allege the foregoing, incorporating the facts and allegations by reference into the following causes of action and claims for relief as though fully set forth herein.

7

38.     MERS and Lorna engaged in the intentional, willful, reckless and/or negligent misrepresentations of the truth and concealed material facts by creating, certifying by signature, and delivering the original Document and then induced others, Kansas Secured Title and Shawnee County Register of Deeds, to act to the detriment of the Petitioner when they relied on the statements of MERS by recording the Document containing false statement. Further by creating a situation where other title companies would be expected to and known to rely on the same Document containing false statements designed to interfere with the chain of title for the real property of and to the detriment of the Petitioners then fraudulently concealing the same by failing to provide them a copy to the homeowners.

39.     MERS and Lorna further engage in fraud through the practice of not verifying information prior to certifying the information on a mortgage now known as "robo-signing".

40.     These acts benefit MERS and Lorna by establishing a false or misrepresented mortgage security interest relating to a loan number and case number that are satisfied or closed.

41.     Each of the false and misleading statements listed above as A-I specifically and others throughout this pleading as well as each later discovered communication and direction whether written or verbal separately or in combination herein create an act of fraud or fraud on the chain of title and the Petitioner's interest in the chain as fee simple real property owners.

42.     Without discovery within the complete control of the Defendant, the specific statements, actors, or other misrepresentations or frauds cannot at this time be properly pled, but Defendant remains on notice as to this issue.

43.     Petitioner has suffered foreseeable damages as a direct and proximate result of the Defendant's misconduct and acts of fraud and or misrepresentation resulting in loss of use of cash funds, loss of or damage to title reputation and loss of use of an accurate chain of title

8

reflecting the property be clear of the Mortgage executed October 9, 2008 and the subsequent

properly recorded release on July 15, 2009 which results in damage the property rights of the

Plaintiffs resulting further in expenditures of time and money relating expenses to correct by a

demand for removal of the restraint created by the Document from the public record containing

Defendants false statements and wrongful acts.

**COUNT VI**
**VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT**
**K.S.A. 50-623, et seq.**

44.     Plaintiffs alleges and re-allege the foregoing, incorporating the facts and

allegations by reference into the following causes of action and claims for relief as though fully

set forth herein.

45.     Defendant MERS, in the ordinary course of business, engages in the service of

accepting specific security interests and tracking the ownership of the particular mortgage as

well as causes releases to be recorded and is therefore a provider of services pursuant to the

Kansas Consumer Protection Act.

46.     Plaintiffs Roy and Sheila Bowers are both individuals who acquired services for

personal, household, or business purposes therefore a consumer pursuant to the Kansas

Consumer Protection Act.

47.     Plaintiffs are aggrieved consumers.

**PROHIBITED ACTS**
**K.S.A. §50-626**

48.     Pursuant K.S.A. §50-626(a), no supplier shall engage in any deceptive act or

practice in connection with a consumer transaction.

49.     The KCPA defines deceptive acts and practices include, but are not limited to, the

following, each of which is hereby declared to be a violation of this act, whether or not any

consumer has in fact been misled.

9

50.     Defendant violates the KCPA by the willful failure to state material facts and the willful concealment, suppression or omission of material facts by MERS when they knew or should have known the Satisfaction they presented releasing the Mortgage was valid and then stated falsely that the Mortgage release was erroneous and failed to provide the information that the loan number had been terminated and the FHA case number was closed.

51.     By disparaging the property of another by making false or misleading representations of material facts effecting the chain of title when Defendants engaged in making defamatory comments and false writings contained in the Document entitled CAVEAT AS TO EXISTENCE OF A MORTGGE LIEN DUE TO ERRONEOUS RELEASE OF MORTGAGE, listed specifically in A-I[3].

52.     By asserting services were of a particular quality, here the truth of the matter and accuracy of the information, when filing a certification that contains the false information from MERS, who is in a position of trust for the real estate records of Shawnee County.

53.     By disparaging the property of another by making the false or misleading written representations of material facts also listed in A-I.

54.     By by failing to provide a copy of the document at Exhibit 3 to Roy and Sheila.

55.     Each example already pled or later discovered should be considered contemplated herein as a separate act.

## UNCONSCIONABILITY
### K.S.A. 50-637

1.   Any violation of the act is an unconscionable practice and shall be subject to all enforcement or penalties.

2.   The Defendant as a provider of mortgage tracking services made misleading statements which the Plaintiff consumer and third parties were intended to detrimentally rely.

---

[3] Some statements were made multiple times and each should be considered a separate act.

3.   Where the Defendants made misleading statements, the conduct is particularly egregious with the consideration of the effects MERS has had on countless Kansas consumer property holders and the property recording system.  This creates a situation of distress where the Plaintiffs have such a large financial investment in the property and MERS as an institution exercises a heightened degree of control over the Bowers property as the mortgagee of record.

4.   Signing documents certifying the truth of the matter without due diligence and which contains false information known as "robo-signing" as an act or practice is a deceptive, unconscionable act with a great impact on these homeowners and real estate at large.

5.   The forgoing Kansas Consumer Protection claims are extreme and numerous.

6.   The acts are continuing in nature and intended to be continuing in nature and should therefore be deemed a separate violation for each day the Document remains effecting title of the Bowers.

## KCPA ENHANCED CIVIL PENALTIES
### K.S.A. 50-677

7.     Violations of the KCPA carry enhanced civil penalties when it is found that any violation is committed against elder or disabled persons, in addition to any civil penalty otherwise provided by law, the court may impose an *additional* civil penalty not to exceed $10,000 for each such violation.

8.     Roy qualifies as an elder person as he is 63 and his date of birth is August 5, 1947 and therefore is entitled the special protection and enhanced penalties under the KCPA for each and every incident or act by MERS and Lorna in each capacity.

9.     Sheila qualifies as an elder person as she is 60 and her date of birth is July 23, 1950 and therefore is also entitled the special protection and enhanced penalties under the KCPA for each and every incident or act by MERS and Lorna in each capacity.

11

10.     Roy and Sheila are aggrieved consumers and have suffered, and or were intended to suffer, foreseeable damages as a direct and proximate result of the Defendants' violations of the Kansas Consumer Protection Act, resulting in part, to the loss of use of cash funds for expenses relating to this action.  Therefore, the Petitioner is entitled to relief in the form of the civil penalty and enhanced penalty for each and every separate act, incident, or statement pursuant the statute.

## RESPONDEAT SUPERIOR

The acts of the employees, officers, and agents, are imputed to the Defendants under the theory of Respondeat Superior.

## RESERVATION TO AMEND THE PLEADING TO COMPORT TO THE EVIDENCE

Certain information is outside the control of the Petitioner and expected to be the subject of discovery.   Specifically those things are within the knowledge and control of the Defendant. Therefore, the Petition is asserted in good faith as notice pleading and subject to amendment upon further information.

## RESERVATION TO CORRECT PARTY NAME OR ADD DEFENDANTS

Outside the scope of Plaintiff's knowledge would be any specific corporate variation of name for Lorna L. Slaughter or variation of name or presence of a sub-corporation for Mortgage Electronic Registration Systems, Inc.   This pleading should be considered to include any unknown names that could be raised but reasonably known to be intended parties included herein the present pleading.  The Defendant should be compelled to immediately inform Petitioner of any technicality so that amendment of the caption to include all parties and proper service made or forever waive and be barred from escaping liability for a technicality not reasonably known to the Plaintiff as well as different from any previous representations.

12

## TRIAL BY JURY

Plaintiff requests trial by jury.

**WHEREFORE**, the Plaintiffs, Roy and Sheila Bowers, based upon the above and foregoing, and as may be further supplemented, orally or in writing, pray that this Honorable Court:

(1).     Grant the Petition, in its entirety;

(2).     Declare the filing of the Document to be of no force and effect;

(3).     Award Plaintiffs damages in an amount to be determined after further discovery;

(4).     Award the statutory and enhanced penalty of $20,000 for both Roy and Sheila as individuals for *each* violation of the KCPA by the Defendants;

(5).     Allow the Petitioner to proceed to jury trial for determination;

(6).     Order Defendants to pay Plaintiff's reasonable attorney's fees and costs; and

(7).     Order such other relief as is deemed equitable, just, and proper under the circumstances.

Respectfully submitted,

Donna L. Huffman (#23324)
Attorney for the Plaintiffs

13

## VERIFICATION

I, Roy B. Bowers, being of lawful age and duly sworn upon his oath states that I have read the foregoing Petition, knows the contents of, and he that the information provided herein is true and accurate to the best of my knowledge, recollection, information and belief.

_Roy B. Bowers_
Roy B. Bowers

STATE OF KANSAS           )
                          )        ss
COUNTY OF JEFFERSON  )

Executed before me by Roy B. Bowers  on this 21 day of October, 2010.

NOTARY PUBLIC - State of Kansas
KELLY J. HATTEMER
My Appt. Exp. _____

_Kelly J. Hatt_
Notary Public

My Commission Expires: _8/11/2012_

[SEAL]

## VERIFICATION

I, Sheila A. Bowers, being of lawful age and duly sworn upon his oath states that I have read the foregoing Petition, knows the contents of, and he that the information provided herein is true and accurate to the best of my knowledge, recollection, information and belief.

_Sheila A. Bowers_
Sheila A. Bowers

STATE OF KANSAS           )
                          )        ss
COUNTY OF JEFFERSON  )

Executed before me by Sheila A. Bowers  on this 21 day of October, 2010.

_Kelly J. Hatt_
Notary Public

My Commission Expires: _8/11/2012_

[SEAL]

NOTARY PUBLIC - State of Kansas
KELLY J. HATTEMER
My Appt. Exp. _____

Book 004644 Page 0016
Page 1 of 8

Shawnee County, Kansas
Register of Deeds
Marilyn L. Nichols
Book: 4644 Page: 16
Line #: 20080021210
Registration Fees: $478.98
Debt: $184,222.00  Mortgage #: 236816
Date Recorded: 10/16/2008 08:55:27.840 AM
By _____

SN0 21751

Return To:
SECURITYNATIONAL
MORTGAGE COMPANY
5300 SOUTH 360 WEST
SUITE 150
MURRAY, UTAH 84123
Prepared By:

SECURITYNATIONAL
MORTGAGE COMPANY
6900 COLLEGE BOULEVARD
SUITE 950
OVERLAND PARK, KANSAS 66211

TITLE NO.:
ESCROW NO.:
LOAN NO.:  0000449035
PARCEL NO.: 015-211-0-00-01-016-040

**Kansas Secured Title**
**785-232-9349**

—————————————[Space Above This Line For Recording Data]—————————————

State of Kansas

# MORTGAGE

| FHA Case No. |
|---|
| 181-2289179-703 - 203(B) |

MIN 1000317-0000449035-1

THIS MORTGAGE ("Security Instrument") is given on         OCTOBER      09 ,  2008
The Mortgagor is
ROY B. BOWERS AND SHEILA A. BOWERS, HUSBAND AND WIFE

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc.
("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as
mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone
number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
SECURITYNATIONAL MORTGAGE COMPANY, A UTAH CORPORATION

("Lender") is organized and existing under the laws of      UTAH                                   , and
has an address of
5300 SOUTH 360 WEST SUITE 150, MURRAY, UTAH 84123
. Borrower owes Lender the principal sum of
ONE HUNDRED EIGHTY FOUR THOUSAND TWO HUNDRED TWENTY TWO AND 00/100——————
                                   Dollars (U.S. $       184,222.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on
NOVEMBER     01 ,  2038   . This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the
payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this

FHA Kansas Mortgage with MERS - 4/96
4N(KS) (0305)                     Amended 2/01          Initials  SB      RB

Page 1 of 8
VMP Mortgage Solutions (800)521-7291
DOCPREP SERVICES, INC.  FORM - MMTGKS-3217       **ORIGINAL**

# EXHIBIT
## P - 1

Book 004644 Page 0016
Page 2 of 8

Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in    SHAWNEE
County, Kansas:

LOT 3, BLOCK D, INDIAN VALLEY SUBDIVISION II, SHAWNEE COUNTY, KANSAS

| | |
|---|---|
| Parcel ID Number:   015-211-0-00-01-016-040 | |
| which has the address of   6235 NE KENDALL WOOD DRIVE | [Street] |
| TOPEKA                                    [City] , Kansas    66617 | [Zip Code] |
| ("Property Address"); | |

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable

LOAN NO.:   0000449035                    Initials  SB    RB

4N(KS)  (0305)                            Page 2 of 8

DOCPREP SERVICES, INC.   FORM - MMTGKS-3217        ORIGINAL

Book 004644 Page 0016
Page 3 of 8

amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later

LOAN NO.:   0009449035                                          Initials S B    KB  ___  ___

4N(KS)  (0305)                                    Page 3 of 8

*DOCPREP SERVICES, INC.*  FORM - MMTGKS-3217              ORIGINAL

Book 004644 Page 0016
Page 4 of 8

sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

LOAN NO.:   0000449035

Initials SB   VB ___ ___

**4N(KS)** (0305)

Page 4 of 8

*DocPrep Services, Inc.* FORM - MNTGKS-3217

**ORIGINAL**

Book 004644 Page 0016
Page 5 of 8

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

LOAN NO.: 0000449035

Initials SB _____ RB _____ _____

4N(KS)  (0305)

Page 5 of 8

*DOCPREP SERVICES, INC.*  FORM - MMTGKS-3217

**ORIGINAL**

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

LOAN NO.:   0000449035                              Initials  SB   R B

4N(KS) (0305)                                       Page 6 of 8

DOCPREP SERVICES, INC.  FORM - MMTGKS-3217          ORIGINAL

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all reasonable expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorney fees, to the extent allowed by applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.

20. **Waiver of Redemption.** Borrower waives all rights of redemption to the extent allowed by law.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider     ☐ Adjustable Rate Rider     ☐ Growing Equity Rider
☐ Planned Unit Development Rider     ☐ Graduated Payment Rider     ☐ Other [specify]

LOAN NO.: 0000449035         Initials _SB_ _RB_ ___ ___

4N(KS) (0305)          Page 7 of 8

*DOCPREP SERVICES, INC.* FORM - MMTGKS-3217      **ORIGINAL**

Book 004721 Page 0100
Page 1 of 1

Shawnee County, Kansas
Register of Deeds
Marilyn L. Nichols
Book: 4721  Page: 100
Line #: 200900015076
Date Recorded: 07/15/2009 09:37:55.343 AM

Recording Requested By

Book 004644 Page 0016
Page 8 of 8

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____     _Roy B Bowers_____ (Seal)
                                                                -Borrower
                                      **ROY B. BOWERS**

_____     _Sheila A Bowers_____ (Seal)
                                                                -Borrower
                                      **SHEILA A. BOWERS**

_____ (Seal)      _____ (Seal)
                     -Borrower                            -Borrower

_____ (Seal)      _____ (Seal)
                     -Borrower                            -Borrower

_____ (Seal)      _____ (Seal)
                     -Borrower                            -Borrower

STATE OF KANSAS,   Shawnee          County ss:
   BE IT REMEMBERED, that on this 9th day of October , 2008,
before me, the undersigned, a Notary Public in and for the County and State aforesaid, personally appeared
**ROY B. BOWERS AND SHEILA A. BOWERS**

to me personally known to be the same person(s) who executed the above and foregoing instrument of writing, and duly acknowledged the execution of same.
   IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal on the day and year last above written.

My Commission Expires: 9/17/11

                                      _____
                                      Notary Public

                                      _Leslie Jo Davis_____
                                      Type Name

LOAN NO.:  0000449035

4NM(KS)  (0306)                       Page 8 of 8

_DocPrep Services, Inc._  FORM - MMTGKS-3217      **ORIGINAL**

When Recorded Return To:

LIEN RELEASE DEPT.
WELLS FARGO HOME MORTGAGE
1003 E BRIER DR
MAC X0501-022
SAN BERNARDINO, CA .92408

## CERTIFICATE OF SATISFACTION

WFHM - CLIENT 708 #:0210393435 "BOWERS" Lender ID:508563/0201034221  Shawnee, Kansas
MERS #: 100031700004490351  VRU #: 1-888-679-6377

KNOW ALL MEN BY THESE PRESENTS that MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., holder
of a certain Mortgage, to secure the amount of $184,222.00, whose parties, dates and recording information are
below, does hereby acknowledge that it has received full payment and satisfaction of the same, and in
consideration thereof, does hereby cancel and discharge said Mortgage.

Original Mortgagor: ROY B. BOWERS AND SHEILA A. BOWERS, HUSBAND AND WIFE
Original Mortgagee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
Dated: 10/09/2008 Recorded: 10/16/2008  in Book/Reel/Liber: 4544 Page/Folio: 16 as Instrument No.:
20080021210, in the records of the Register of Deeds of Shawnee County, State of Kansas

Legal: LOT 3, BLOCK D, INDIAN VALLEY SUBDIVISION II, SHAWNEE COUNTY, KANSAS

Property Address: 6235 NE KENDALL WOOD DRIVE, TOPEKA, KS  66617

IN WITNESS WHEREOF, the undersigned, by the officer duly authorized, has duly executed as a free act and deed,
the foregoing instrument.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
On July 3rd, 2009

By: _____
LILY CHIU, Vice-President

STATE OF California
COUNTY OF San Bernardino

On July 3rd, 2009 before me, CLARA SALAS, Notary Public, personally appeared LILY CHIU , who proved to me
on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.

_____
CLARA SALAS
Notary Expires: 06/08/2010  #1673374

(This area for notarial seal)

"CHI*CHIULWF*07/03/2009 03:19:41 PM* WFMC04*WFMW0000000000000000439918* KSSHAWN* 0210393435 KESTATE_MORT_REL "CHIULWF"

# EXHIBIT
# P - 2

Book 004758 Page 0118
Page 1 of 2

Shawnee County, Kansas
Register of Deeds
Marilyn L. Nichols
Book: 4758  Page: 118
Line #: 2009O0024482
Date Recorded: 11/20/2009 11:22:53.683 AM

SNO21751

## Kansas Secured Title
### 785-232-9349

## CAVEAT AS TO EXISTENCE OF A MORTGAGE LIEN DUE TO
## ERRONEOUS RELEASE OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that Mortgage Electronic Registration

Systems, Inc. ("MERS"), as nominee for Lender and the Mortgagee in that certain

Mortgage bearing the date of October 9, 2008, originally made and executed by Roy B.

Bowers and Sheila A. Bowers, husband and wife, as Borrowers ("Grantors") to MERS,

Mortgagee, as Nominee for Lender ("Grantee"), and recorded on October 16, 2008, in the

office of the Register of Deeds of Shawnee County, Kansas, in Book 4644, at Page 16,

covering property described as follows:

> Lot 3, Block D, INDIAN VALLEY SUBDIVISION II
> Shawnee County, Kansas,

does hereby certify and declare that said Mortgage was released in error by the

instrument identified as "Certificate of Satisfaction", which was recorded in the office of

the Register of Deeds of Shawnee County, Kansas, in Book 4721, at Page 100, on July

15, 2009.

This Caveat of the existence of a valid mortgage lien is being recorded as the

reinstatement and reaffirmation of that valid first real estate mortgage by Grantors to

Grantee which was released in error; further, that the underlying debt obligation owed by

File No: 107644

**EXHIBIT
P - 3**

Book 004758 Page 0118
Page 2 of 2

Grantors, evidenced by said Mortgage has not been fully paid, nor satisfied, nor discharged, but, instead, continues to exist; and, further, that "Certificate of Satisfaction", which was made in error, should not be construed as any impairment to the Mortgage.

IN WITNESS WHEREOF, the undersigned has caused its name to be signed to these presents by its duly authorized officer on the 13th day of November, 2009.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. ("MERS")
MORTGAGEE AND AS NOMINEE FOR LENDER

BY: _____
LORNA L. SLAUGHTER,
Vice President

## ACKNOWLEDGMENT

STATE OF MARYLAND   )
                                     ) SS.
COUNTY OF FREDERICK  )

On this 13th day of November , 2009, before me, a notary public in and for said aforesaid county and state, personally appeared Lorna L. Slaughter, Vice-President of Mortgage Electronic Registration Systems, Inc., known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity and, that by her signature on the instrument, the person or the entity upon behalf of which the person acted, executed the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, the day and year last above written.

_____
Notary Public: Sandi Plummer

My Appointment expires:
August 29.2013

File No:   107644                          2