## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ROY AND SHEILA BOWERS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **Case No. 10-4141-JTM–DJW** |
| | ) | |
| **MORTGAGE ELECTRONIC** | ) | |
| **REGISTRATION SYSTEMS** | ) | |
| **and LORNA SLAUGHTER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Wells Fargo Bank, N.A. ("Wells Fargo") has filed a Motion to Intervene in Case (ECF No. 31) as a matter of right pursuant to Fed. R. Civ. P. 24(a)(2) or, alternatively, intervene permissively pursuant to Fed. R. Civ. P. 24(b)(1)(B). Wells Fargo seeks to intervene as a party defendant and counterclaim plaintiff to protect its alleged lien interest in a promissory note issued to Plaintiffs and secured by a real estate mortgage that was erroneously released after an attempted refinance. Plaintiffs oppose intervention and urge abstention on the grounds of public policy and deference to state law. As explained below, Wells Fargo's motion to intervene is granted.

## I.    BACKGROUND FACTS

Plaintiffs Roy and Sheila Bowers ("Bowers") executed a residential mortgage on or about October 9, 2008 in order to secure repayment of a loan from Security National Mortgage Company. To obtain the loan, Plaintiffs granted their lender a security interest in their property via the mortgage and executed a promissory note in the amount of $184,222.00. Wells Fargo

serviced the loan and eventually came to own the promissory note, on which the Plaintiffs made regular monthly payments.

Plaintiffs attempted to refinance their loan with Wells Fargo, who terminated the 2008 loan on July 1, 2009.  Wells Fargo also executed a Certificate of Satisfaction on July 3, 2009, which provided that Plaintiffs' mortgage had been released, and also sent a letter of congratulations to Plaintiffs on July 6, 2009, informing them of the loan payoff.

However, on November 13, 2009, Defendant Mortgage Electronic Registration Systems ("MERS") executed a Caveat as to Existence of a Mortgage Lien Due to Erroneous Release of Mortgage ("Caveat").  This document, signed by Defendant Lorna Slaughter, essentially stated that the Certificate of Satisfaction had been executed in error and that Plaintiffs were still required to pay their mortgage as their debt was never fully paid.

Plaintiffs sued Defendants for slander and disparagement of title, conversion, negligence, fraud and/or misrepresentation, and violation of the Kansas Consumer Protection Act ("KCPA") in the District Court of Shawnee County, Kansas.  Defendants removed the case to this Court on November 16, 2010.  Defendants filed their Amended Answers on January 21, 2011.  Wells Fargo filed this Motion to Intervene on April 15, 2011.

## II.   ARGUMENTS ASSERTED IN FAVOR OF AND AGAINST ALLOWING WELLS FARGO TO INTERVENE IN THIS CASE

Movant Wells Fargo asserts that intervention is appropriate under Federal Rule of Civil Procedure 24.  First, its motion for intervention is timely because the existing parties have not yet taken depositions or initiated written discovery.  Second, Wells Fargo claims an interest in the case because, as owner of the promissory note, it is entitled to repayment of the loan secured through an erroneously released mortgage.  Because any finding that the loan was validly released would impact this repayment right, disposal of this action would impede Wells Fargo's

2

interest.  Lastly, MERS' involvement, based solely on the Caveat, may be insufficient to protect Wells Fargo's interest since MERS has no rights in the note or loan.  Overall, these claims and rights share common legal and factual elements, so the inclusion of Wells Fargo would be both efficient and practical.

Plaintiffs argue that Wells Fargo should not be permitted to intervene in this action, but focus their argument on abstention doctrines and public policy considerations.  Citing the *Younger* and *Burford* abstention doctrines,[1] Plaintiffs argue that foreclosure is a fundamental and evolving state concern, involving complex statutory and administrative mechanisms, which federal courts are ill-equipped to untangle.   Furthermore, Wells Fargo is involved with concurrent state proceedings to which the federal courts should yield.  Additionally, because this case concerns the questionable business practices of MERS, Plaintiffs argue that inclusion of Wells Fargo would improperly and unnecessarily expand the scope of the litigation.  Plaintiffs also argue that adding Wells Fargo will destroy diversity jurisdiction.  Lastly, Plaintiffs deny that Wells Fargo has an interest in the instant case, contending that Wells Fargo's own documentation shows that their interest terminated in 2009.

In their reply, Wells Fargo acknowledges that it filed a foreclosure action in Kansas state court, but points out that it requested and received dismissal of that case on January 6, 2011.  Reiterating their bases for intervention, Wells Fargo identifies several Kansas District and Bankruptcy cases dealing with state foreclosures and reinstatement of erroneously released mortgages, arguing that these sorts of cases are regularly handled in federal court because they do not involve new or novel areas of the law. Wells Fargo also argues that Plaintiffs' insistence to pursue their case in a piecemeal fashion is arbitrary and inefficient.

---

[1]First expressed in *Younger v. Harris*, 401 U.S. 37 (1971); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

### III.    APPLICABLE LAW

#### A.    *Intervention As A Matter of Right*

Federal Rule of Civil Procedure 24(a) delineates a non-statutory right to intervene:

> On timely motion, the court must permit anyone to intervene who . . . (2) claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

In the Tenth Circuit, intervening parties are not required to show independent Article III standing, "so long as another party with constitutional standing on the same side as the intervenor remains in the case."[2]

All intervention motions must be timely.  Because there is no definition of timeliness contained within the rule, the determination of a motion's timeliness is left to the judge's sound discretion.[3]  The judge must consider all circumstances, including "the length of time since the applicant knew of [its] interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances."[4] Intervention should be allowed by the courts when "no one would be hurt and greater justice could be attained."[5]

Once a motion has been deemed timely, a judge must allow intervention under Fed. R. Civ. P. 24(a)(2) when the proposed intervenor (1) has an interest relating to the property or transaction underlying the case whose (2) rights would be impeded or impaired by disposition of

---

[2]*San Juan Cnty., Utah v. U.S*., 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc).

[3]*Lumbermens Mut. Cas. Co. v. Rhodes*, 403 F.2d 2, 5 (10th Cir. 1968).

[4]*Utah Ass'n of Counties v. Clinton,* 255 F.3d 1246, 1250 (10th Cir. 2001).

[5]*Id.* (citing *Sierra Club v. Espy,* 18 F.3d 1202, 1205 (5th Cir. 1994)). One method of determining timeliness is whether the parties have commenced discovery. *Wyandotte Nation v. City of Kan. City, Kan*., 200 F. Supp. 2d 1279, 1287 (D. Kan. 2002).

the case and (3) whose rights are inadequately represented by the existing parties. This is not a "mechanical rule" with "rigid, technical requirements."[6] Efficiency and fairness dictate that a movant should be allowed to intervene if it will be substantially affected by the outcome.[7] Thus, courts are "somewhat liberal" in allowing intervention as a matter of right,[8] because the rule's elements are flexible, practical, interdependent, and heavily fact-specific.[9]

Whether a movant has an interest relating to the property or transaction involves a broad inquiry, assessing only "the practical effect of the litigation" on the movant's interest.[10]  The assessment is intended to be inclusive, so as to involve "as many apparently concerned persons as is compatible with efficiency."[11]  Therefore, the movant's relationship with the *subject* of the action is determinative, not its relationship with the *issues* before the court.[12] While other Circuits require the movant have a "direct, substantial, and legally protectable" ('DSL') interest, this jurisdiction's emphasis on practical effect includes interests broader than (but often inclusive

---

[6]*San Juan Cnty.*, 503 F.3d at 1195.

[7]*Id.* at 1195. (citing Fed. R. Civ. P. 24 advisory committee's note (1966 Am.)).

[8]*WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010); *Nat'l Farm Lines v. Interstate Commerce Comm'n,* 564 F.2d 381, 384 (10th Cir. 1977).

[9]*San Juan Cnty.*, 503 F.3d at 1195-1196 (citing 6 James Wm. Moore et al., *Moore's Federal Practice* § 24.03[1][b], at 24-25 (3d ed. 2006)).

[10]*Id.* at 1193.

[11]*Id.* at 1195

[12]*WildEarth Guardians*, 604 F.3d at 1198. *See also Utah Ass'n of Counties*, 255 F.3d at 1252.

of) DSL interests.[13]   Successful interventions usually involve property interests in land, funds,

the environment, or intellectual property.[14]

Whether the movant's interest may be impaired by the litigation is a minimal burden,

requiring a showing only that denial of intervention could possibly impair a substantial legal

interest.[15]   The court may consider any legal impairment – analysis is not restricted to "a rigid *res*

*judicata* test."[16]   Because an adverse ruling could impair a party in future proceedings[17] the

"mere availability of alternative forums" is insufficient grounds to deny intervention.[18] Even

when a movant has a right that may be impaired, intervention is prohibited if that right is already

adequately represented by existing parties. This too is a minimal burden, requiring the movant to

show only the possibility that the representation may be inadequate.[19]

---

[13]*San Juan Cnty.*, 503 F.3d at 1193.

[14]*See Coalition of Ariz./N.M. Counties for Stable Economic Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996), *Wyandotte Nation*, 200 F. Supp. 2d at 1288. *See also* 7C Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 1908.1 at 309-322 (2007).

[15]*WildEarth Guardians*, 604 F.3d at 1199 (citing *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009) (omitting internal quotations and citations)).

[16]*Coal. of Ariz./N.M. Counties*, 100 F.3d at 844.

[17]*WildEarth Guardians*, 604 F.3d at 1199 (citing *Utahns for Better Transp. v. DOT*, 295 F.3d 1111, 1116 (10th Cir. 2002); *Coal. Of Ariz./N.M. Counties*, 100 F.3d at 844)). *See also Federal Deposit Ins. Corp. v. Jennings*, 816 F.2d 1488, 1492 (10th Cir. 1987) (discussing issues of *stare decisis* and collateral estoppel on impairment prong of Rule 24(a)).

[18]*WildEarth Guardians,*604 F.3d at 1199.

[19]*Id.  See also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.") (citations omitted).

### B.    *Permissive Intervention*

Rule 24(b)(1)(B) also provides for a non-statutory permissive intervention:

> (1) On timely motion, the court may permit anyone to intervene who . . . (B) has a claim or defense that shares with the main action a common question of law or fact.
>
> \*       \*       \*
>
> (3) . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Rulings on permissive intervention are discretionary,[20] and thus reviewable on appeal only for abuse of discretion.[21] This includes a timeliness analysis, identical to right-based interventions.[22]

Rule 24(b)(2) is very broad,[23] "construed liberally in favor of intervention."[24]  Even though the rule requires intervenors to share some common "claim or defense" with the main action, this should not be construed so strictly as to prevent permissive intervention.[25]

## IV.    ANALYSIS

### A.    Intervention

The primary issue before the Court on this motion is whether Wells Fargo should be allowed to intervene in this case.  Rule 24 controls both mandatory and permissive interventions.

---

[20]*Kane County, Utah v. U.S.*, 597 F.3d 1129, 1135 (10th Cir. 2010) (citing *City of Stilwell, Okla. v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996)).

[21]*Id.* at 1133.

[22]*Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1231-32 (10th Cir. 2010).

[23]*City of Herriman v. Bell*, 590 F.3d 1176, 1184 (10th Cir. 2010).

[24]*Utah Ass'n of Counties,* 255 F.3d at 1249.

[25]*City of Herriman*, 590 F.3d at 1184.

7

This Court finds persuasive Wells Fargo's arguments favoring Rule 24(a)(2) intervention as a matter of right.

### 1.       *Timeliness of Motion to Intervene*

Both types of intervention motions must be timely filed, so timeliness analysis provides a logical starting point. In this case, however, timeliness is not significantly disputed. Wells Fargo filed this motion for intervention prior to service of written discovery, just shy of five months from the date of Defendants' notice of removal.[26] No unique circumstances are involved. The addition of Wells Fargo would not prejudice or harm the existing parties or delay the trial. Finally, Plaintiffs do not argue against timeliness in their brief, and neither Defendant objects to intervention. As a result, this Court finds that Wells Fargo's motion for intervention is timely.

### 2.       *Claimed Property Interest Relating to Subject of Action*

The facts show that Plaintiffs borrowed $184,222 in late 2008 and signed a promissory note for a thirty year mortgage. Wells Fargo claims ownership of that note and that MERS, at Wells Fargo's direction, erroneously released the mortgage in mid-2009, less than one year later. MERS' filing of the Caveat as lender nominee, in an attempt to rectify this error, forms the basis for all of Plaintiff's claims. Plaintiff disputes Wells Fargo's current ownership of the mortgage, but not Wells Fargo's past ownership or that a current mortgage still likely exists somewhere.

These facts matter because intervention is highly fact-specific; fortunately, the Supreme Court and Tenth Circuit courts have provided examples of "significantly protectable" interests

---

[26]*See Mannering v. Exxonmobil Oil Corp.*, No. CIV-04-1305-L, 2005 WL 2019532, at *2 (W.D. Okla. Aug. 19, 2005) (a motion filed less than five months after filing of an action does not constitute unreasonable delay).

that support intervention.[27] Some of these interests directly correlate with Wells Fargo's claimed interest. Plaintiff does not dispute that an intervenor claiming an interest in a mortgage or note, when the mortgage and note provide the basis for the action, has a direct, substantial, and legally protectable interest under Rule 24(a)(2) -- they instead argue extensively that Wells Fargo does not currently have such an interest. But a "current interest" is not what the rule requires.

As a result, this Court disagrees with Plaintiff's contention that Wells Fargo's interest is speculative or non-existent. It is unnecessary for Wells Fargo to prove current ownership of the note; requiring this would contradict the Rule's text and Tenth Circuit precedent.[28] This Court does not need to determine whether Wells Fargo has a valid interest, as they claim – only that the property interest claimed by Wells Fargo relates to the subject of the case.

Plaintiffs are correct that Wells Fargo's interest cannot be speculative; however, the interest *can* be contingent on the outcome of the case.[29] When Wells Fargo's interest terminated is at the heart of many of Plaintiff's claims. It is difficult to see how Plaintiffs can prove, for example, their Disparagement of Title claim as pled without addressing whether and how Wells Fargo improperly directed MERS to create the Caveat. Plaintiffs may ultimately succeed in showing Wells Fargo possessed no actual, legal interest, but Wells Fargo ought to be allowed to

---

[27]*E.g., Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 145-146 (1967) (listing a "claim of a part owner to personal property being foreclosed under a mortgage", a "creditor asserting security interest in goods", and "a mortgage line on a leasehold interest subjected to forfeiture" as supporting intervention); *San Juan Cnty*, 503 F.3d at 1197-98 (listing a "financial stake[s] in securing a favorable outcome" and "protecting [or] maintaining property values" as interests supporting intervention).

[28]*See San Juan Cnty.*, 503 F.3d at 1200 (noting that "Rule 24(a)(2) does not speak of 'an interest in the property'; rather, it requires only that the applicant for intervention 'claim[ ] an interest *relating to* the property or transaction which is the subject of the action.') (emphasis in original).

[29]*Id.* at 1203.

show otherwise. This comports with the stated purpose of Rule 24(a)(2).[30] Thus, this Court finds that Wells Fargo possesses an interest relating to the property which is the subject of this action, as required by Rule 24(a)(2).

### 3.    *Impairment or Impediment to Interest*

Whether Wells Fargo's claimed interest could be impaired or impeded by the current action constitutes the next Rule 24(a)(2) inquiry. The Court finds that Wells Fargo's interest meets the minimal burden of showing a potential impairment if intervention is denied.

Interest and impairment are not independent elements – strong interests require less potential impairment than uncertain interests, which must show significant possible impairment.[31] It is not necessary to show that Wells Fargo's rights are guaranteed to be impaired by the litigation, and it is irrelevant that impairment may not occur even if Plaintiffs prevail.[32]

Wells Fargo has both a strong interest and a strong potential impairment that could result from these proceedings. At trial, many factual determinations relevant to Wells Fargo may occur, including whether a note existed, who owned it, and when that ownership terminated. These factual determinations, if adverse, could be relevant in subsequent cases. For example, it is foreseeable that Wells Fargo's could be hindered in state foreclosure proceedings if the jury in this case finds the mortgage release valid or the caveat invalid. Any practical or legal effect may be considered,[33] so a potential *res judicata* effect is sufficient impairment under Rule 24(a)(2).[34]

---

[30]*Id.* at 1195 ("[T]he interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.") (citing *Coal. of Ariz./N.M. Counties*, 100 F.3d at 841).

[31]*Id.* at 1195. *See also Fed. Deposit Ins. Corp. v. Jennings*, 816 F.2d 1488, 1492 (10th Cir. 1987) (interest and impairment are intertwined).

[32]*Id.* at 1200.

[33]*Coal. of Ariz./N.M. Counties*, 100 F.3d at 844.

### 4.      Inadequate Representation of Interest

Finally, the Court finds that Wells Fargo's claimed interest may not be adequately represented by the existing Defendants. It is not hard to come up with potential reasons as to why this would be the case, and Plaintiff does not address nor seemingly dispute this issue.

For example, the Caveat clearly indicates that MERS was acting "as nominee for Lender and Mortgagee,"[35] which Wells Fargo claims to be.  This relationship is undefined, but both the State of Kansas and this District have recently analyzed the relationship in joinder cases involving MERS. The Kansas Supreme Court has recognized that nominees generally do not have the same interests as the underlying lenders, and affirmed denial of joinder.[36]  A recent District of Kansas case has found that MERS "[had] *its own* interest in the mortgage" and required joinder of MERS under Fed. R. Civ. P. 19.[37]  The court did not say that MERS had the *same* interests as the lender, who was already involved in the case.  It simply noted that no party could better protect MERS' interests than MERS itself.  It follows that MERS cannot protect Wells Fargo's claimed interests better than Wells Fargo.

This is particularly true when the parties' interests differ, as they clearly do in this case.  Wells Fargo's interest is in showing continued validity of their promissory note, while

---

[34]*Id. See also Jennings*, 816 F.2d at 1492; *Utahns for Better Transp.,* 295 F.3d at 1116.

[35]Caveat, Pls' Opp. Mem.(ECF No. 40-3).

[36]*See Landmark Nat. Bank v. Kesler*, 289 Kan. 528, 539, 541, 216 P.3d 158, 166-167 (2009) ("The relationship that MERS has to Sovereign is more akin to that of a straw man than to a party possessing all the rights given a buyer . . . If MERS is only the mortgagee, without ownership of the mortgage instrument, it does not have an enforceable right.").

[37]*Renkemeyer v. Mortg. Elec. Registration Sys., Inc.*, No. 10-2415-JWL, 2010 WL 3878582, at 2 n. 3 (D. Kan. Sept. 28, 2010) (emphasis added).

Defendant's interests are in defending against Plaintiffs' claims of fraud, misrepresentation, and disparagement of title.  However, it is not necessary to show that the parties' interests are significantly different or that MERS will inadequately represent Wells Fargo's interest.  All that must be shown, under the liberal standard of Rule 24(a)(2), is that the representation may be inadequate.  Wells Fargo has met that burden.

### 5.        *Permissive Intervention*

Having found that intervention as a matter of right is proper under Rule 24(a)(2), this Court is not required to also address permissive intervention.  However, given all the foregoing analysis and conclusions regarding timeliness, lack of harm or prejudice to the parties, and the existence of an interest relevant to the underlying claim, permissive intervention under Rule 24(b)(1)(B) is also appropriate, given the Rule's liberal scope of application.

### 6.        *Diversity Jurisdiction*

Plaintiffs also argue that allowing Wells Fargo to intervene in this action will destroy diversity and improperly expands the scope of the current action.  They anticipate that diversity will be destroyed when Wells Fargo names the Kansas title company and the Kansas collector in the case as it proceeds.

Plaintiffs are Kansas residents and seek damages exceeding $75,000. Defendant MERS is a Delaware corporation, and Defendant Lorna Slaughter is a Maryland citizen.  Diversity thus existed at the time of removal under 28 U.S.C. § 1332.

Once original jurisdiction is established, 28 U.S.C. § 1367(a) grants supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution" and includes parties added by joinder or intervention. Though there are

exceptions found in 28 U.S.C. § 1367(b), these exceptions apply to plaintiffs, not defendants.[38] The same facts that make Wells Fargo a candidate for intervention allow supplemental jurisdiction over related claims; it would not be improper for Wells Fargo to raise related issues.

Even if Wells Fargo had been a party from the beginning, it is difficult to see how diversity would be impacted. Wells Fargo could have been included as defendant, so long as their incorporation state or principal place of business was not in Kansas, and still maintain diversity under 28 U.S.C. § 1332. Wells Fargo claims that it is a federally-chartered bank with its main offices in South Dakota, and is therefore a citizen of South Dakota.[39] Contrary to Plaintiffs' argument, allowing Wells Fargo to intervene in this action will not destroy diversity jurisdiction.

Plaintiffs do not dispute Wells Fargo's citizenship, they argue instead that they anticipate that both the Kansas title company and the Kansas collector will be named. This speculation as to parties that *may* be added has no bearing on Wells Fargo's addition to the case. As a result, this Court finds that adding Wells Fargo does not destroy diversity jurisdiction or improperly expand the scope of this Court's jurisdiction or the case at bar.

### 7.    *Abstention*

Finally, Plaintiffs devote a significant portion of their brief to the issue of abstention, and rely heavily on the analysis contained within *Forde v. First Horizon Home Loan Corp.*[40] That case is clearly distinguishable from the facts of this case in that the court was ruling on a motion

---

[38]*Price v. Wolford*, 608 F.3d. 698, 702-703 (10th Cir. 2010).

[39]Wells Fargo Reply (ECF No. 45), at 1 n.1.

[40]*Forde v. First Horizon Home Loan Corp.*, No. CIV 10-01922 PHX MEA, 2010 WL 5758614 (D. Ariz. Dec. 6, 2010).

to remand to state court. The Court finds Plaintiffs' abstention argument to be unavailing here in the context of a motion to intervene.

**IT IS THEREFORE ORDERED** that Wells Fargo's Motion to Intervene in Case (ECF No. 31) is granted.  Wells Fargo shall electronically file its proposed Answer to Complaint and Counterclaim, which is attached as Exhibit A to its Memorandum in Support of its Motion to Intervene in Case (ECF No. 32-1) by **August 8, 2011**.  Any response by Plaintiffs shall be filed by **August 29, 2011**.

**IT IS FURTHER ORDERED** that a telephone Status Conference is set for **September 12, 2011 at 2:00 p.m.** to discuss scheduling issues.

**IT IS FURTHER ORDERED** that Plaintiffs' request for their fees in responding to the motion is denied.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 3rd day of August, 2011.


/s David J. Waxse
David J. Waxse
U.S. Magistrate Judge


cc:     All counsel and *pro se* parties