## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ROY AND SHEILA BOWERS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | **Case No. 10-4141-JTM–DJW** |
| | ) | |
| **MORTGAGE ELECTRONIC** | ) | |
| **REGISTRATION SYSTEMS,** | ) | |
| **INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion for Entry of Protective Order from Corporate Representative Deposition Notice (ECF No. 62). Defendant Mortgage Electronic Registration Systems ("MERS") seeks a protective order under Fed. R. Civ. P. 26(c) relieving it from the obligation to produce a corporate representative to testify to the 22 topics set forth in Plaintiffs' Rule 30(b)(6) deposition notice. The motion is granted.

### I.     Relevant Factual Background

Plaintiffs Roy and Sheila Bowers executed a residential mortgage on or about October 9, 2008, in order to secure repayment of a loan from Security National Mortgage Company. To obtain the loan, Plaintiffs granted their lender a security interest in their property via the mortgage and executed a promissory note in the amount of $184,222.00. Wells Fargo serviced the loan and eventually came to own the promissory note, on which the Plaintiffs made regular monthly payments.

Plaintiffs attempted to refinance their loan with Wells Fargo, who terminated the 2008 loan on July 1, 2009. Wells Fargo also executed a Certificate of Satisfaction on July 3, 2009, which

provided that Plaintiffs' mortgage had been released, and also sent a letter of congratulations to Plaintiffs on July 6, 2009, informing them of the loan payoff.

On November 13, 2009, MERS executed a document entitled "Caveat as to the Existence of a Mortgage Lien Due to Erroneous Release of Mortgage"(hereafter the "Caveat"). The Caveat is signed by Lorna Slaughter, as Vice President of MERS and states that MERS, as nominee for Lender and the Mortgagee, "does hereby certify and declare that [the October 9, 2008] Mortgage was released in error by the instrument identified as 'Certificate of Satisfaction,' which was recorded in the office of the Register of Deeds of Shawnee County, Kansas, . . . on July 15, 2009."[1] The Caveat further states:

> This Caveat of the existence of a valid mortgage lien is being recorded as the reinstatement and reaffirmation of that valid first real estate mortgage by Grantors to Grantee which was released in error; further, that the underlying debt obligation owed by Grantors, evidenced by said Mortgage <u>has not been fully paid, nor satisfied, nor discharged</u>, but, instead, continues to exist; and, further, that "Certificate of Satisfaction," which was made in error, should not be construed as any impairment to the Mortgage.[2]

The Caveat was recorded in Shawnee County, Kansas, by the Register of Deeds on November 20, 2009.

Plaintiffs sued Defendants for slander and disparagement of title, conversion, negligence, fraud and/or misrepresentation, and violation of the Kansas Consumer Protection Act in the District Court of Shawnee County, Kansas. Defendants removed the case to this Court on November 16, 2010.

On April 15, 2011, Wells Fargo filed a motion to intervene in the case as a party defendant

---

[1] Caveat, Ex. 3 to Def.'s Amendment to Mot. for Protective Order & Reply (ECF No. 90-2).

[2] *Id.* (underlining in original).

and counterclaim plaintiff to protect its alleged lien interest in a promissory note issued to Plaintiffs. The Court granted the motion on August 3, 2011, and Wells Fargo was permitted to intervene in the case. On August 4, 2011, Wells Fargo filed its answer and counterclaim.

While the motion to intervene was pending, Plaintiffs issued a Notice of Rule 30(b)(6) Deposition (ECF No. 56) to Defendant MERS, Duces Tecum, on July 1, 2011. This Notice set the deposition on August 2, 2011, to be held at the offices of Plaintiffs' counsel in Oskaloosa, Kansas. The Notice also requested that MERS representative(s) be produced for deposition to testify as to 22 topics. The topics listed in the Notice can be grouped into five general categories: (1) History and corporate structure of MERS; (2) April 13, 2011 consent order between MERS and the government; (3) the policies and business practices of MERS; (4) Information regarding its members and member services; and (5) Information specific to Plaintiffs' mortgage.

## II.     Timeliness of the Motion for Protective Order

Plaintiffs argue that Defendants' Motion for Protective Order is made out of time. They contend that D. Kan. Rule 26.2(b)(2) requires that a motion for protective order be filed within 14 days of service of the deposition notice. Defendant MERS maintains that it timely filed its motion for protective order to stay the deposition on July 18, 2011. By its calculation, if the three days for mailing provided by Fed. R. Civ. P. 6(d) are included, then its motion for protective order was filed within the 14 days of the notice of the deposition, which was served on July 1, 2011.

Plaintiffs argue that the "local rules require the Defendant to both file an objection within 14 days of being served [with the deposition notice] and at least 48 hours prior to the noticed time of the deposition" and cite to D. Kan. Rule 26.2(b)(2). These deadlines, however, are not deadlines for the filing of a discovery motion directed toward a deposition, but rather are the deadlines for

when a properly-noticed deposition is automatically stayed. A close reading of D. Kan. Rule 26.2(b)(2) reveals that motions for protective order pursuant to Fed. R. Civ. P. 26(c) are not included in the list of motions that require a copy of the motion be delivered within 14 days of service of the deposition notice and at least 48 hours prior to the noticed time of the deposition to be automatically stayed. Subsection (a) of D. Kan. Rule 26.2 provides that the filing of a motion for a protective order pursuant to Fed. R. Civ. P. 26(c) stays the discovery at which the motion is directed pending order of the court. Subsection (b) of that Rule provides that a properly-noticed deposition is automatically stayed if:

> (1) one of the following motions has been filed:
>   (A)   motion to quash or modify a deposition subpoena pursuant to Fed. R. Civ. P. 45(c)(3)(A); or
>   (B)   motion to order appearance or production only upon special conditions pursuant to Fed. R. Civ. P. 45(c)(3)(C); and
> (2) the objecting party has filed and served the motion upon the attorneys or parties
>   (A)   by delivering a copy within 14 days after service of the deposition notice; and
>   (B)   at least 48 hours prior to the noticed time of the deposition.[3]

Subsection (b) does not include motions for protective order pursuant to Fed. R. Civ. P. 26(c).[4] The Court therefore concludes that under a plain reading of D. Kan. Rule 26.2(b) the requirements that a copy of the motion be delivered within 14 days of service of the deposition notice and at least 48

---

[3] D. Kan. Rule 26.2(b).

[4] The Court notes that D. Kan. Rule 26.2 was amended December 1, 2009, to change the 11-day deadline to 14 days to be consistent with the 2009 changes to the Federal Rules of Civil Procedure. The amendment made other changes to the local rule. Before the 2009 amendment, D. Kan. Rule 26.2 did not expressly limit the 11-day and 48-hour requirements to the Rule 45(c) motions. Rather it generally provided that: "No properly noticed deposition shall be automatically stayed under this rule unless the motion directed at it shall have been filed and served upon counsel or parties by delivering a copy within 11 days after service of the deposition notice, and at least 48 hours prior to the noticed time of the deposition."

hours prior to the noticed time of the deposition are limited to Rule 45(c) motions and do not apply to a motion for entry of a protective order filed pursuant to Fed. R. Civ. P. 26(c). Instead, the motion is governed by subsection (a) of D. Kan. Rule 26.2, which provides that the filing of a motion for a protective order pursuant to Fed. R. Civ. P. 26(c) stays the discovery at which the motion is directed pending order of the court. The Rule 30(b)(6) deposition of Defendant MERS is appropriately stayed until the Court rules on Defendants' motion for protective order.

### III.    Relief Sought by Defendant MERS

In their original motion, Defendants sought a protective order that narrowed and/or eliminated the topics in Plaintiffs' Rule 30(b)(6) deposition notice that were overly broad, unduly burdensome, and sought irrelevant information. Defendant MERS also requested that the Court order the deposition(s) to be held at its principal place of business in Virginia rather than the Kansas offices of Plaintiffs' counsel. In its amendment to the motion and supplemental reply (ECF No. 90), Defendant MERS now asks the Court to quash the Rule 30(b)(6) deposition notice in its entirety now that Wells Fargo has been permitted to intervene in the case and because Plaintiffs failed employ the administrative procedure required to obtain non-public information under the control of the Office of the federal Comptroller of the Currency ("OCC").

Plaintiffs argue that MERS fails to show good cause for a protective order or provide any authority why it should not have to produce representatives for its deposition. They request that the Court order MERS to designate their corporate representatives and order them to appear for deposition to answer all 22 topics in the Rule 30(b)(6) deposition notice.

####        A.    Law Regarding Protective Orders and Rule 30(b)(6) Depositions

A party seeking to preclude a Rule 30(b)(6) deposition may apply to the court for a

protective order under Federal Rule of Civil Procedure 26(c)(1). That Rule provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." To establish good cause, a party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[5]

The court has broad discretion to decide when a protective order is appropriate and what degree of protection is required.[6] The Supreme Court has recognized that "[t]he trial court is in the best position to weigh fairly the competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."[7] Furthermore, the court is required by Fed. R. Civ. P. 26(b)(2)(C)(I) to limit the frequency or extent of discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." The court is also required to limit the extent of discovery if the burden of the proposed discovery "outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."[8]

Where the corporation's undue burden argument against a Rule 30(b)(6) deposition is based on the relevance of the topics specified in the notice, the court must take its well-established liberal

---

[5]*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

[6]*MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

[7]*Seattle Times*, 467 U.S. at 36.

[8]Fed. R. Civ. P. 26(b)(2)(C)(iii).

6

approach to discovery relevance.  "The [United States Supreme] Court has more than once declared that the deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials."[9]  To accomplish that purpose, Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."

Federal Rule of Civil Procedure 30(b)(6) sets forth the procedure for deposing a party who is a business organization such as MERS.  The Rule provides as follows:

> In [its deposition] notice . . . a party may name as the deponent a public or private corporation . . . or other entity and *must describe with reasonable particularity* the matters for examination.  The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify . . . . The persons designated must testify about information known or reasonably available to the organization.[10]

In order for Rule 30(b)(6) to function effectively, the party seeking the deposition "must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute."[11]  "An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task."[12]  When the notice is overbroad, the responding party is unable to identify the outer limits of the areas of inquiry noticed, and designating a

---

[9]*Cotracom Commodity Trading Co. v. Seaboard Corp.*, No. 97-2391-GTV, 2000 WL 796142 at *2 (D. Kan. June 14, 2000) (quoting *Herbert v. Lando*, 441 U.S. 153, 176 (1979)).

[10]Fed. R. Civ. P. 30(b)(6) (emphasis added).

[11]*Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 528 (D. Kan. 2008) (quoting *Prokosch v. Catalina Lighting, Inc.,* 193 F.R.D. 633, 638 (D. Minn. 2000)).

[12]*Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000).

representative in compliance with the deposition notice becomes impossible.[13]

### B.     Request to Preclude Deposition in its Entirety

#### 1.     Wells Fargo's Intervention

MERS asks the Court to quash the deposition notice in its entirety because Wells Fargo has been permitted to intervene in the action. It argues that Wells Fargo's subsequent intervention as a defendant and counterclaim plaintiff has fundamentally altered the discovery landscape in this case and no longer can Plaintiffs argue they should look only to MERS for discovery because Wells Fargo is not a party. Rather, because Wells Fargo is Plaintiffs' lender, Wells Fargo is and always has been the entity that knows of any facts or information that would be relevant to Plaintiffs' claims. The only involvement of MERS with the loan is that it held a very limited role by serving as the mortgagee of record, as the nominee for Wells Fargo, a role Plaintiffs acknowledged when they executed their Mortgage in 2008. The instrument at issue here, which Plaintiffs describe as the key piece of evidence in their case, was executed by Lorna Slaughter, as an officer of MERS at the direction of Wells Fargo. Ms. Slaughter testified that she executed the document at the direction of Wells Fargo, and because it was necessary to protect Wells Fargo's interest in the promissory note secured by Plaintiffs' Mortgage. MERS itself had no involvement with Plaintiffs at any time; Plaintiff Sheila Bowers testified at her deposition that she did not even know what MERS was and only communicated with Wells Fargo, not MERS.

Plaintiffs argue that Wells Fargo's intervention as a party does not relieve MERS of its discovery obligations to produce a corporate representative to testify to a properly noticed Rule 30(b)(6) deposition notice. It points out that MERS is still a party to the action, and even non parties

---

[13]*Lipari v. U.S. Bancorp, N.A,* No. 07-2146-CM-DJW, 2008 WL 4642618, at *5 (D. Kan. Oct. 16, 2008).

can be deposed.

Plaintiffs are correct that Wells Fargo's intervention in the case does not relieve MERS of its discovery obligations, including producing a corporate representative to testify to a properly noticed deposition notice. The argument that MERS should not have to respond to Plaintiffs' deposition notice because of its very limited involvement with Plaintiffs' loan does not relieve it of its discovery obligations as a party in the case. Plaintiffs have asserted claims for slander and disparagement of title, conversion, negligence, fraud and/or misrepresentation, and violation of the Kansas Consumer Protection Act against MERS. They are entitled to discovery to support those claims by deposing MERS. Defendant MERS is not exempt from its discovery obligations merely by virtue of Wells Fargo's intervention in the case. Defendant MERS has not shown sufficient good cause to preclude its Rule 30(b)(6) deposition in its entirety based upon Wells Fargo's intervention in the case.

### 2. Non-Public OCC Information

MERS also asks the Court to quash the deposition notice in its entirety because Plaintiffs have provided no notice that permission was sought and obtained for the OCC to gain access to non-public OCC information. It asserts that under 12 C.F.R. § 4.33(a)(1), "[a] person seeking non-public OCC information must submit a request in writing to the OCC." The requester must make certain showings under § 4.33(a)(3)(iii)(A)-(E) for the request to be considered. MERS asserts that Plaintiffs have not submitted any written request to the OCC under § 4.33, and thus have not sought or obtained OCC approval to receive non-public OCC information. For these reasons, it is appropriate for the Court to quash the deposition notice to MERS in its entirety.

Plaintiffs argue that this is the first time MERS has raised the issue that Plaintiffs are

required to seek information from it, a party to a lawsuit, by administrative avenues rather than by the scheduling order or the Federal Rules of Civil Procedure. As MERS did not raise this in their original motion, Plaintiffs claim that the Court should not consider it. Plaintiffs further argue that the regulation cited by MERS, 12 C.F.R. § 4.33, refers to seeking OCC information, not MERS information. MERS also fails to address or identify that any document or subject that Plaintiffs seek that would not be available under 12 C.F.R. § 4.12.

Although MERS asserts this argument as a reason to preclude its deposition in its entirely, the Court views this argument to relate only to Topic Nos. 3-6 asking for information on the 2011 consent order. In any event, MERS has not provided any authority for its position that Plaintiffs must obtain OCC approval before they can depose MERS about the consent order. Furthermore, the Court agrees with Plaintiffs that regulation cited by MERS, 12 C.F.R. § 4.33, refers to seeking information from OCC, and does not apply to information sought from MERS.

### C.   Objections to Deposition Notice Topics

Even though MERS is not exempt from being deposed in this case, either by Wells Fargo's intervention in the case or because Plaintiffs never requested OCC approval to receive non-public OCC information, it may nevertheless still be entitled a protective order. MERS asserts several objections to the 22 topics, some with multiple subparts. It argues that the topics are overly broad, unduly burdensome, cumulative, harassing, and seek discovery not relevant to the claims asserted by Plaintiffs in this case.

The Court has reviewed the 22 disputed deposition topics contained in the deposition notice. Based upon that review, the Court finds that the wide-ranging and broad nature of the deposition topics subjects MERS to an undue burden. First, several of the noticed deposition topics are not

described with the requisite reasonable particularity required under Rule 30(b)(6). Plaintiffs, as the party seeking the 30(b)(6) deposition, "must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute."[14] Specifically, the Court finds that Plaintiffs' Deposition Topic Nos. 1, 7, 16, and 19 are not described with reasonable particularity. Topic No. 1 requests that Defendant MERS produce a representative who can testify knowledgeably about "Authority." The Topic further attempts to narrow this to:

> Able to explain how authority is derived and the history of MERS (MERS I & MERS II) with details of dissolution of the entities and creation of the next MERS as well as the current MERS. (All variations- evolution of MERS including the Articles and Bylaws of each entity).

The Court finds that Topic No. 1 is not described with the reasonable particularity required by Rule 30(b)(6). The topic's general and vague reference to "authority" is not sufficient to identify the type or nature of "authority" that MERS should produce a representative to testify knowledgeably about. The Court speculates that Plaintiffs may be referring to the authority for Ms. Slaughter to execute the Caveat, but the Topic does not state that. Furthermore, with regard to the Topic's request for the history of MERS and MERS II, dissolution of the entities and creation of the next MERS, as well as the current MERS, the Court fails to see the relevance of this information to any of the claims and defenses in this case. As Defendant MERS points out, the claims asserted in this case are fairly narrow and are not as broad as Plaintiffs seem to believe. Plaintiffs have failed to convince the Court of the relevance of information on the history of MERS and MERS II, or dissolution of the entities and creation of the next MERS, as well as the current MERS, all as sought by Topic No. 1.

---

[14] *Sprint*, 236 F.R.D. at 528 (quoting *Prokosch,* 193 F.R.D. at 638).

The Court further finds that Topic No. 7 is not stated with reasonably particularity. Topic No. 7 seeks a MERS representative who can testify about "Quality Assurance and Data Integrity including the reporting systems including reconciliation between members." The Topic fails to identify or define what Plaintiffs are referring to as "Quality Assurance and Data Integrity."

Topic No. 16 also fails to describe the matters for examination with reasonable particularity. It seeks testimony about "Transaction Authorized by Member Certificate including the description of the "transactions" with both charges with details of the "certificate." The Topic fails to identify what Plaintiffs are referring to as the "Transaction Authorized by Member Certificate." It further fails to identify the "transactions" MERS is supposed to describe.

Finally, the Court finds that Plaintiffs have not described Topic No. 19 with reasonable particularity. The general and vague reference to "Terms and Conditions" without any reference to an underlying document is not described with the reasonable particularity required by Rule 30(b)(6).

The Court finds the remaining topics, while sufficiently reasonably particular, are otherwise so overly broad that they subject MERS to an undue burden in attempting to respond to the deposition notice. Many of the topics have no application to the claims asserted in this case, but rather to the claims in other litigation, some theoretical problem with MERS or the industry in which it operates. Considering the needs of this case, the importance of the issues at stake in the action, and the importance of the discovery sought in resolving the issues in this case, the Court finds that the burden on MERS of producing a representative to testify to the far-reaching 22 topics contained its Rule 30(b)(6) deposition notice outweighs the likely benefit of the discovery sought. Accordingly, under Fed R. Civ. P. 26(b)(2)(C)(iii), the Court must limit the discovery. The Court

will therefore grant Defendants' motion for a protective order from Plaintiffs' Notice of Rule 30(b)(6) Deposition, served on July 1, 2011.  The Court, however, is not entering a protective order that Plaintiffs can never depose MERS, only that this particular deposition notice subjects MERS to an undue burden.  Any future 30(b)(6) deposition notice that Plaintiffs may serve upon MERS should describe the matters for examination with the reasonable particularity required by Rule 30(b)(6) and should limit the topics to matters that are not unreasonably cumulative or duplicative of other discovery.[15]  Finally, Plaintiffs should keep in mind that the deposition topics should be limited to discovering information relevant to their claims actually asserted in this case.

## IV.     Location of the Rule 30(b)(6) Deposition

Plaintiffs designated the Oskaloosa, Kansas offices of Plaintiffs' counsel as the site for the Rule 30(b)(6) deposition.  Defendants argue in their motion that the Rule 30(b)(6) deposition should take place at the corporation's principal place of business in Virginia.  The Court agrees.  It is well-settled that there is an initial presumption that "a defendant should be examined at his residence or the principal place of business."[16]  To relocate a Rule 30(b)(6) deposition from its designated site, "the party seeking protection should demonstrate its principal place of business to be different from the location designated by the notice."[17]  The Court finds that Defendant MERS has demonstrated its principal place of business to be in Virginia.  Unless the parties agree otherwise, Virginia is the proper location for the Rule 30(b)(6) deposition of MERS.

---

[15]*See* Fed. R. Civ. P. 26(b)(2)(C)(i) (requiring the court to limit the extent of discovery if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive").

[16]*Starlight Int'l Inc. v. Herlihy,* 186 F.R.D. 626, 644 (D. Kan. 1999).

[17]*Id.*

**IT IS THEREFORE ORDERED THAT** Defendants' Motion for Entry of Protective Order from Corporate Representative Deposition Notice (ECF No. 62) is granted.  MERS is granted a protective order from producing any representatives to testify to Plaintiffs' Notice of Rule 30(b)(6) Deposition of MERS, Duces Tecum, dated July 1, 2011.  Plaintiffs may, however, serve MERS with another notice of deposition pursuant to Fed. R. Civ. P. 30(b)(6) in accordance with the rulings in this Memorandum and Order.

**IT IS FURTHER ORDERED THAT** any future Rule 30(b)(6) deposition of Defendant MERS shall be held at its principal place of business in Virginia, unless the parties otherwise agree to another location.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 2nd day of December, 2011.

s/ David J. Waxse
David J. Waxse
United States Magistrate Judge