IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

S<small>HEILA</small> B<small>OWERS</small>, *et al.*,

    Plaintiffs,

vs.                             Case No. 10-4141-JTM

M<small>ORTGAGE</small> E<small>LECTRONIC</small> R<small>EGISTRATION</small>
S<small>YSTEMS</small>, I<small>NC</small>., *et al.*,

    Defendants.

MEMORANDUM AND ORDER

The facts of this case have been extensively reviewed in the court's Order of October 4, 2012, which granted summary judgment in favor of intervenor Wells Fargo, reinstated the mortgage to reflect the terms of the loan taken out by Roy Bowers on October 9, 2008, and recognized the existence of the mortgage as a lien interest in the residential property that Plaintiffs owned in Shawnee County, Kansas.[1] This Order resolved most of the outstanding issues between the parties. The matter is now before the court on the motions by Wells Fargo for determination of liability on the claim for mortgage foreclosure, and for attorney fees.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no

---

[1] With the September 6, 2012, death of Roy Bowers, Sheila Bowers is now the sole owner of the property. Wells Fargo seeks *in rem* relief, not a personal judgment against Sheila Bowers herself, as she was not a borrower on the loan, but did execute the mortgage and acknowledged the lien. The court has authorized the substitution of Lance A. Weeks, administrator of the probate estate of Roy B. Bowers, deceased, for Plaintiff/counterclaim defendant Roy B. Bowers. (Dkt. 351).

genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The court omits from its findings of facts any findings requested by a party which lack evidentiary support, which are not cited in the argument portion of the party's brief, or which seek to reargue the court's prior findings.

*Count III and Foreclosure*

The factual and legal conclusions reached in the Court's October 4, 2012 Memorandum and Order are largely dispositive of the foreclosure. Additional facts submitted to the Court establish that the mortgage at issue encumbers residential property located at 6235 NE Kendall Wood Drive, Topeka, Kansas 66617. This property bears a legal description of Lot 3, Block D, Indian Valley Subdivision II, Shawnee County, Kansas. Roy and Sheila Bowers bought the property on March 28, 2007, "as joint tenants with the right of survivorship and not as tenants in common."

The Bowers executed a mortgage to secure repayment of a loan taken out by Roy Bowers on the same date as the mortgage, a loan evidenced by a fixed rate promissory note in the principal sum of $184,222.00, payable to SecurityNational Mortgage Company and its successors and assigns. This note bore interest at a fixed interest rate of 7.00% per annum.

Wells Fargo is in possession of the original note, which is endorsed by SecurityNational to Wells Fargo and then endorsed by Wells Fargo in blank. Wells Fargo is authorized to enforce the note and the mortgage upon default. The mortgage secures the obligations undertaken by Roy Bowers in executing the note, giving the lender security for

> (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

A first-priority lien, the instrument mortgages, conveys, and warrants all the Bowers' interests in the Property to Wells Fargo for the purpose of securing repayment of the note, and provides for judicial foreclosure in the event the note is breached.

When Roy Bowers took out the loan on October 9, 2008, the mortgage carried insurance issued by the Federal Housing Administration/Housing and Urban Development, but that insurance was terminated in July 2009 when the original Mortgage

3

was released in connection with a proposed refinance of the original loan that was not completed. As a result of the release of the mortgage and the insurance it originally carried, the mortgage equitably reinstituted in the Court's prior Order is free from any FHA/HUD insurance.

From the first payment due on the original loan through May 2009, the Bowers made average monthy mortgage payments of $1,786.16. As of November 2009, the monthly amount due on the loan was $1,835.94. For approximately sixteen months, from July 27, 2009 to October 2010, the Bowers made monthly payments to Wells Fargo of $1,587.30. These payments reflected the terms of the putative loan refinance that did not close.

To date, the debt evidenced by the note and mortgage on the original loan has not been paid or satisfied by the Bowers. The debt has been accelerated and was turned over to a foreclosure firm with which the Bowers communicated in October 2010.

From the time they received notification from Wells Fargo that the putative loan refinance had been retracted, the Bowers continued to remit monthly payments to Wells Fargo in the amount of $1,587.30, as if the refinance had occurred. These payments were insufficient to pay the terms of the 2008 loan, which required from November 2009 to 2010 a monthly payment of $1,835.94.

Section 18 of the mortgage and Section 6(c) of the note provide for the recovery of Wells Fargo's attorneys' fees and expenses. Under Section 18 of the Mortgage, "Lender shall be entitled to collect all reasonable expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorney fees, to the extent allowed by applicable law." Section 6(c) of the note provides that "Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing the Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of the Note."

4

Kansas recognized as "elementary" the principle that a mortgage foreclosure judgment may be obtained by summary judgment. *Gibson v. Rea*, 92 Kan. 262, 262-63, 140 P. 893, 893 (1914). *See generally City of Topeka v. Watertower Place Dev. Group*, 265 Kan. 148, 959 P.2d 894 (1998); *LaSalle Nat'l Bank v. Friesen*, No. 98698, 2010 WL 2977930 (Kan. App. July 23, 2010). State law requires that the plaintiff in a mortgage foreclosure action establish (1) a promissory note reflecting debt; (2) a mortgage securing the repayment of the debt; and (3) the existence of a default on the loan. *Cornerstone Homes v. Skinner*, 44 Kan. App.2d 88, 97-98, 235 P.3d 494, 500-01 (2010).

The court finds that the uncontroverted facts establish that Wells Fargo is entitled to an *in rem* judgment against Sheila Bowers foreclosing the mortgage. As noted earlier, the court has found that a promissory note exists, and is properly held by Wells Fargo. (Dkt. 301 at 7-8 n. 2). Further, the court determined under the facts of the case that Wells Fargo possesses an equitable mortgage interest in the property. (*Id.* at 35-36), and that Wells Fargo was entitled to enforce both the note and its mortgage interest. (*Id.* at 8). . Finally, the uncontroverted facts establish that the Bowers defaulted on the terms of the note by failing to pay the monthly amount due under the 2008 loan. (*Id.* at 28). The plaintiff has presented no argument in opposition to foreclosure which was not previously presented to and rejected by the court.

This *in rem* judgment shall extinguish any interest of the Bowers in the property subject, but will not permit a deficiency judgment against Sheila Bowers, herself or as representative of Roy Bowers. As joint tenants with the right of survivorship and not as tenants in common, Sheila Bowers automatically received Roy Bowers' interest in the property on his death. *See In re Estate of Laue*, 225 Kan. 177, 185, 589 P.2d 558, 565 (1979). Wells Fargo acknowledges that Kansas law does not require a lender to first obtain a personal judgment against a deceased borrower prior to seeking foreclosure. *See State Bank of Downs v. Criswell*, 124 P.2d 500, 155 Kan. 314 (1942). However, "in an abundance of

caution," Wells Fargo does request a judgment on the note against Sheila Bowers as the representative of Roy Bowers, affirmatively representing to the court that it "execute on through *in rem* relief against Sheila Bowers as the sole owner of the Property." (Dkt. 319, at 9). In light of this representation, the uncontroverted facts, and the approval of the substitution (Dkt. 351), the court grants Wells Fargo's motion and will authorize judgment against Sheila Bowers.

Given the fluctuating dollar value of the default over time due to interest, taxes, and insurance costs, the court will not render a determination as to the total default, and directs the parties to communicate as to this amount, with the goal of submitting a proposed judgment. If the parties cannot agree, they shall so state to the court, presenting their respective positions as to the value of the total default in briefs filed no later than 14 days after the date of this Order. *See Resolution Trust Corp. v. Friesen*, 783 F. Supp. 1292, 1297 (D. Kan. 1992) (applying similar approach).

*Attorney Fees*

Wells Fargo has also moved for an award of attorney fees. As noted earlier, Section 18 of mortgage expressly provides that the lender is "entitled to collect all reasonable expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorney fees, to the extent allowed by applicable law." Section 6(c) of the note also expressly provides for an award of attorney fees.

When presented with a request for attorney fees, the burden is on the party requesting the fees to establish their reasonableness. *Kansas Penn Gaming v. HV Properties*, 790 F.Supp.2d 1307, 1314 (D. Kan. 2011) (applying Kansas law). This determination includes an assessment of

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee

> customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services, and (8) whether the fee is fixed or contingent.

*Id.* (citing KRPC § 1.5(a)). The requesting party must submit records which document the award. *See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. Kan. 1998). Due to his or her experience and knowledge of the legal profession, the trial judge is deemed an expert on attorney's fees and may draw on that expertise in rendering an award in a particular case. *Thoroughbred Associates, LLC v. Kansas City Royalty Co.*, LLC, 45 Kan.App.2d 312, 248 P.3d 758, 774 (2011). The reasonable value of attorney's fees rests with the sound discretion of the trial court. *See City of Wichita v. BG Products, Inc.*, 252 Kan. 367, 845 P.2d 649, 653 (1993).

Considering all the relevant factors, the court finds the requested attorney fee award, although substantial, is justified. Notably, the award here is larger than the expected value of the underlying mortgage interest. However, this must be balanced against the voluntary actions of the plaintiffs, who have caused the present action to metastasize beyond any reason. It was the plaintiffs who initiated the present action, bringing claims for damages against MERS and individually against Lorna Slaughter, one of Wells Fargo's employees, seeking a judgment of $16 million. Even though Wells Fargo was obviously a proper party to the action, plaintiffs vigorously sought to prevent its joining the case.

Although other parties have been named in the action, it is uncontroverted that Wells Fargo has had to bear the expense of defending against the Bowers's claims. Neither MERS nor Lorna Slaughter has compensated Wells Fargo.

After Wells Fargo successfully joined the action, it has had to contend with a barrage of discovery. The court has been forced to admonish plaintiffs against the repetition of losing arguments (Dkt. 189 at 3-4), and noted the extravagant discovery sought by

7

plaintiffs. (Dkt. 291, at 3). The Bowers presented 318 separate discovery requests against the Wells Fargo defendants (Wells Fargo, MERS, and Slaughter). This includes 202 Requests for Admissions, 89 Requests for Production, and 27 interrogatories presented in thirteen separate discovery requests. Much of the discovery sought is detailed and complex. The Bowers repeated the efforts at discovery, even as the summary judgment motions were being briefed, and indeed brought renewed requests even after summary judgment was awarded to Wells Fargo. Many of their motions were denied by the Magistrate Judge for various reasons, but only after the expenditure of substantial time and effort by the court and by the defendant.

The court has carefully reviewed the defendant's lengthy itemization of its hours expended in the present action (Dkt. 321 Exh. G), and cannot find that the hours sought are unreasonable given the remarkable circumstances of the present case. In addition, the court has reviewed the hourly rates sought by defendant for work completed by four attorneys,[2] and finds that these rates are below the rates typically charged by counsel, and are consistent with rates charged by area attorneys of comparable experience in commercial and contract litigation. *See Garcia v. Tyson Foods*, 06-2198-JTM, 2012 WL 5985561, *3-4 (D. Kan. 2012) (finding $302 hourly rate reasonable); *Fairfax Portfolio v. Owens Corning Insulating Systems*, 11-2007-CM, 2012 WL 3201986 (D. Kan. 2012) (determining that requested "hourly rate, which ranges from $205 to $390 per hour for attorneys and $155 per hour for a paralegal, results in a presumptively reasonable lodestar fee")

Notably, the plaintiff responded to the Motion for Attorney Fees by objecting that the fees "are per se unreasonable," but has otherwise failed to elaborate on this assertion. Instead, when Wells Fargo documented its attorney fee request in detail, plaintiff moved

---

[2] Wells Fargo seeks compensation for the work of two partners, Jennifer Donnelli and Thomas Nanney, at respective rates of $320 and $365 per hour, and two associates, Timothy Davis and Sara Butler, at respective rates of $180 and $210 per hour. These are below the standard billing rates for each attorney, which are, respectively, $360, $405, $230, and $250 per hour.

8

to strike that memorandum, arguing that it was an untimely Reply brief under D.Kan.R. 6.1(d) and 7.1.

Rules 6.1 and 7.1, which govern pleadings generally, have no application here. D.Kan.R. 54.2 specifically governs the procedure for the award of attorney fees, and Rule 54.2(e) expressly provides:

> The memorandum in support of the Rule 54 motion must be supported by time records, affidavits, or other evidence. *The memorandum need not be filed at the same time as the motion. This is an exception to Rule 7.1(a).* Other parties have 14 days to file a response to the memorandum in compliance with this rule.

(Emphasis added). Further, the Subsection (c) of the Rule expressly provides that a party may document its fee application "within 30 days of filing the motion."

Accordingly, the court finds that Wells Fargo's memorandum in support of its fee application (Dkt. 319) was timely, as it was filed on November 15, 2012 and thus less than 30 days after its October 16, 2012 Application for Attorney Fees (Dkt. 304). The plaintiffs' Motion to Strike is denied.

More importantly for present purposes, the plaintiffs have still failed to level specific objections to the amount of hours expended or the hourly rates. Under Rule 54.1(d), any such response should have been submitted no later than November 29, 2012. No such response was submitted by that date or since.

Rather than challenging the amount to be recovered, the plaintiffs argue against any award of fees. Without developing the argument, the plaintiffs suggest in passing that Wells Fargo cannot recover the costs of defending against claims asserted against Lorna Slaughter or MERS. This argument fails, as the court's review of the billing records indicated that the entire requested fee is work performed by counsel for Wells Fargo. Nor can the plaintiffs escape responsibility for Wells Fargo's attorney fees on the grounds that they initially sued only Slaughter (Wells Fargo's employee) or MERS (Wells Fargo's nominee in the execution of the Caveat), and fought against Wells Fargo's motion to

9

intervene. As the Magistrate Judge recognized in granting leave to intervene, the interest of Wells Fargo "is at the heart of many of Plaintiff's claims [and it] is difficult to see how Plaintiffs can prove, for example, their Disparagement of Title claim as pled without addressing whether and how Wells Fargo improperly directed MERS to create the Caveat." (Dkt. 70, at 9). Given its interest at the heart of the Bowers' claims, Wells Fargo's participation in the action was not simply foreseeable, it was virtually certain. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (approving award of attorney fees claims associated with "a common core of facts").

The plaintiffs' argument otherwise rests on the Kansas version of the Universal Consumer Credit Code, K.S.A. 16a-2-507, which caps any award of attorney fees in an action to collect on consumer credit to 15% of the amount of the unpaid debt. However, the UCCC expressly excludes first mortgages on residential property. K.S.A. 16a-1-301(17). That provision contains some exceptions for certain high-interest or underwater loans, but the facts establish that those exceptions are inapplicable here. The note and mortgage are expressly excluded from coverage by the UCCC, and the plaintiffs have otherwise failed to show that an award of attorney fees would be inappropriate.

The Supreme Court has cautioned that a party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent ... in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n. 11, 106 S. Ct. 2686 (1986) (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (*en banc*)). Similarly, the Tenth Circuit has observed that "[a]n aggressive litigation strategy carries with it certain risks, one of which is that a party pursuing an aggressive strategy may, if it loses, find itself required to bear a portion of the attorneys' fees incurred by the other party in responding to that aggressiveness." *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1260 (10th Cir. 2005). *See also In re Williams Securities Litig'n*, 558 F.3d 1144, 1150 (10th Cir. 2009) (recognizing higher attorney fees may result where, among other factors, "Plaintiffs' aggressive course of discovery ... necessarily

resulted in heightened defense costs"). In the present case, plaintiffs have employed an unboundedly aggressive strategy against Wells Fargo, and may be properly held to account for the defendant's expenses in securing its rights.

IT IS ACCORDINGLY ORDERED this 26th day of March, 2013, that the court grants Wells Fargo's Motion for Summary Judgment as to Count III (Dkt. 318), as provided herein, and further grants Wells Fargo's Application for Attorney Fees (Dkt. 304) in the amount of $286,536.00, plus $2560.00 for attorney and legal assistant time to prepare the fee application and Bill of Costs, for a total of $289,096.00; together with $9,204.15 in costs, as described in the Bill of Costs. Plaintiffs' Motion to Strike (Dkt. 330) is denied.

 s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE